UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

PATRIA A. WILLIAMS,                  )   No. CV 05-2476-PLA
                                     )
            Plaintiff,               )
                                     )   **MEMORANDUM OPINION AND ORDER**
      v.                             )
                                     )
JO ANNE B. BARNHART,                 )
COMMISSIONER OF SOCIAL               )
SECURITY ADMINISTRATION,             )
                                     )
            Defendant.               )
_____)

## I.

## PROCEEDINGS

Plaintiff filed this action on April 5, 2005, seeking review of the Commissioner's denial of her application for Supplemental Security Income benefits. The parties filed a Consent to proceed before the undersigned Magistrate Judge on May 12, 2005. Pursuant to the Court's Order, the parties filed a Joint Stipulation on December 12, 2005, that addresses their position concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on November 3, 1949. [Administrative Record ("AR") at 43.] She has attended college, and her previous work experience includes positions as an in-home care worker, nurse assistant, and driver. [AR at 55-60, 65, 70.]

On November 1, 2002, plaintiff protectively filed an application for supplemental security income benefits, alleging disability due to a heart problem, asthma, arthritis, and nerve damage in her right elbow. [AR at 12, 43-45, 64.] She claimed she has been unable to work since January 1, 2002. [AR at 43.] After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on December 3, 2003, at which time plaintiff appeared with counsel and testified on her own behalf. A vocational expert also testified. [AR at 309-32.] On April 13, 2004, the ALJ found that plaintiff suffers from the severe impairments of asthma, arthritis, and right elbow impairment. [AR at 12-18.] The ALJ further found that plaintiff has the residual functional capacity[1] to perform light work[2] with certain limitations,[3] and can perform her past relevant work. [AR at 18.] For this reason, the ALJ concluded that plaintiff is not under a disability, and is not eligible for benefits. [AR at 18.] When the Appeals Council denied review on January 26, 2005, the ALJ's decision became the final decision of the Commissioner. [AR at 3-5.]

---

[1] Residual functional capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[2] Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b) and 416.967(b).

[3] Specifically, the ALJ found that plaintiff "can lift and carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk for about 6 hours in an 8 hour workday. She can sit for about 6 hours in an 8 hour workday. She is limited in her ability to push/pull with her upper extremities. She can occasionally reach overhead with her bilateral arms. She can occasionally perform forceful gripping and frequent gross handling. She needs to avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation." [AR at 18.]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term substantial evidence means more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion. Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are disabled for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the

claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a severe impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a severe impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments (Listing) set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B.  **THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. [AR at 13.] At step two, the ALJ concluded that plaintiff's impairments -- asthma, arthritis, and right elbow impairment -- are severe. [Id.] The ALJ found, however, that the impairments do not meet or equal any impairments in the Listing (step three). [Id.] At step four, the ALJ concluded that plaintiff is able to perform her past relevant work as a home health aide and is not disabled. Thus, the ALJ did not reach step five of the sequential analysis. [AR at 16-18.]

/

V.

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to properly consider the opinion of the consultative examiner. Joint Stipulation ("Joint Stip.") at 3. According to plaintiff, the results of her January 13, 2003, internal medicine examination by Dr. Soheila Benrazavi show that she can only perform occasional fine manipulation and must work in an environment free of smoke, fumes, and dust. Joint Stip. at 4-5. Thus, plaintiff asserts, the ALJ erred in not including these restrictions in setting her residual functional capacity. Joint Stip. at 6. For the reasons discussed below, the Court agrees with plaintiff, and reverses the ALJ's decision and remands for further proceedings.

As relevant to the issue raised in the Joint Stipulation, plaintiff was first seen by Dr. Jamshid J. Hekmat on January 4, 2002, for an orthopedic evaluation of an injury that occurred in April, 2001. [AR at 167-74.] Plaintiff complained of pain in the areas of her right shoulder, right elbow, and right arm, as well as pain in the area of her left shoulder that is aggravated by activities requiring lifting or reaching above shoulder level. She also complained of pain in her neck and upper back based on over-compensation for the problems with her arms. She exhibited moderate tenderness in the mid-cervical spine region radiating to the base of the neck and upper thoracic region, marked tenderness in the right shoulder, and tenderness of the left shoulder with possible impingement syndrome of both shoulders. Her range of motion of the shoulders was somewhat below normal. There was marked tenderness of the right elbow, and moderate tenderness over the cubital tunnel with positive Tinel sign. She also displayed moderate grip weakness of the right hand and generalized weakness of both shoulders. X-rays revealed mild degeneration at multiple levels of the cervical spine, and moderate degeneration of the acromioclavicular joint of the shoulders. Dr. Hekmat diagnosed plaintiff with a contusion of the right upper extremity with sprain/strain of the right shoulder and shoulder impingement syndrome; contusion of the right elbow and cubital tunnel syndrome; impingement syndrome of the left shoulder; and sprain of the cervical spine. Later in January, Dr. Hekmat reviewed studies showing the presence of osteochondritis of the right elbow, bilateral carpal tunnel syndrome, and degeneration and impingement of the acromioclavicular joint on both shoulders, as well as a protruding disc in her

cervical spine. [AR at 163-66.] On March 14, 2002, plaintiff underwent arthroscopic surgery of her right shoulder. [AR at 271-73.]

In May, 2002, plaintiff returned to Dr. Hekmat, still complaining of pain and residual stiffness of the shoulder, both elbows, and both wrists. An examination again revealed marked tenderness at her left shoulder and right elbow, as well as tenderness over both wrists. [AR at 160-62.] In June, 2002, Dr. Hekmat noted that plaintiff had marked limitation of motion of the right shoulder and right elbow. [AR at 157-59.] In August, 2002, Dr. Hekmat reported that plaintiff had improved range of motion of the shoulder, and marked improvement of the range of motion of the elbow, but her left shoulder still had marked tenderness. Plaintiff's residual neck pain with localized tenderness over the cervical region persisted. [AR at 154-56.]

On January 13, 2003, plaintiff was given a complete internal medicine evaluation by Dr. Soheila Benrazavi. She complained of bilateral elbow pain and hand numbness, asthma, and a broken left wrist. Plaintiff reported that she had broken her left wrist approximately 3 days prior to the examination. Dr. Benrazavi indicated that plaintiff's right hand grip was diminished, and her left hand grip could not be assessed as a result of the cast that she was wearing. Plaintiff's range of motion: 1. of her neck was diminished, 2. of her back was within normal limits, 3. of her bilateral shoulders was reduced, 4. of her elbows was grossly normal on the right side, but could not be assessed on the left side, 5. of her wrists was grossly normal at her right wrist, but could not be assessed for her left wrist. Her motor strength at her left upper extremity also could not be assessed. Plaintiff's sensation was diminished on the right fourth and fifth digits of the upper extremity, and appeared to be diminished in the fourth and fifth digits on the left side as well. A review of plaintiff's past MRIs and other studies revealed bicipital tenosynovitis and some acromial bursitis, discogenic changes at various levels in her cervical spine, and entrapment neuropathy of the ulnar nerve across both elbows. Dr. Benrazavi found that plaintiff had no limitations with standing and walking. As a result of the fracture to her left wrist, there would be a period of time for healing and recovery during which there should be no lifting on that side. Even after recovery, as a result of her bilateral ulnar entrapment neuropathy, plaintiff "would still have limitations of firm grip and heavy lifting, pushing and pulling as well as fine manipulation in the bilateral upper

extremities to an occasional basis." She could lift no more than 20 pounds occasionally and 10 pounds frequently. Her work environment should be free of smoke, fumes and dust due to her asthma. [AR at 188-95.]

On January 29, 2003, state agency physician Jabat completed a Physical Residual Functional Capacity Assessment form in which he concluded that plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds, could stand and/or walk for 6 hours and sit for about 6 hours in an 8 hour work day, and could push and/or pull to a limited extent in her upper extremities. [AR at 197-205.] His conclusion was based in part on Dr. Benrazavi's report. [AR at 198.] Dr. Jabat further concluded that plaintiff was limited to occasional reaching overhead bilaterally, and to gross manipulation in handling, but that she was unlimited in her ability to perform fine manipulation. Dr. Jabat recognized that his conclusion as to plaintiff's ability to perform fine manipulation significantly differed from that of Dr. Benrazavi [AR at 204], but he opined that the two digits that are numb all the time "have the least functional value relative to the hand," and that "[a]n individual would not significantly lose fine manipulation or fingering" with plaintiff's impairments. [AR at 200.] He further concluded that plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation. [AR at 202.]

Plaintiff testified that she is experiencing back and neck pain which is so severe most of the time that she cannot even walk. [AR at 315.] She does not do any cooking or cleaning because of the pain in her back. [AR at 316.] She has to have assistance in everything that she does, including getting out of bed and bathing. [AR at 318.] Despite the right shoulder surgery she had, she still experiences pain, and she can only lift her arm to a certain extent. [AR at 318-19.] Her pinky and ring finger on her right side are numb, and she has some damage in her fingers on her left side as well. [AR at 320.]

The ALJ posed a hypothetical to the vocational expert utilizing the findings of the state agency physician, i.e., limitations to "essentially light work," with only occasional overhead work activity with either upper extremity, and with only occasional forceful gripping but frequent gross handling with the right dominant hand. Based on plaintiff's testimony, the vocational expert determined that she would be capable of working in a home health care position as performed by

1  plaintiff. [AR at 326-27.] If the hypothetical individual were limited to occasional firm gripping,
2  occasional pushing and pulling, as well as occasional fine manipulation with a light residual
3  functional capacity, that person could not perform plaintiff's past work.  There would, however, be
4  "very few" other jobs that such an individual could perform, one being a school bus monitor. [AR
5  at 329.]

6  The ALJ gave "significant weight" to the opinion of the state agency physician, who
7  concluded, among other things, that plaintiff can 1. "occasionally perform forceful gripping and
8  frequent gross handling," and 2. needs to "avoid concentrated exposure to fumes, odors, dusts,
9  gases, and poor ventilation." [AR at 16.] The ALJ imposed no restrictions on her ability to perform
10 fine manipulation, thus implicitly rejecting Dr. Benrazavi's finding in that regard.[4]

11 Ninth Circuit cases distinguish among the opinions of three types of physicians: (1) those
12 who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant
13 (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining
14 physicians).  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  The opinion of a treating
15 physician is given deference because "he is employed to cure and has a greater opportunity to
16 know and observe the patient as an individual." Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir.
17 1987) (citations omitted).  "The opinion of the treating physician, however, is not necessarily
18 conclusive as to either the physical condition or the ultimate issue of disability." Magallanes v.
19 Bowen, 881 F.2d 747, 751 (9th Cir. 1989); Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th
20 Cir. 1989).

21 "'The administrative law judge is not bound by the uncontroverted opinions of the claimant's
22 physicians on the ultimate issue of disability, but he cannot reject them without presenting clear
23 and convincing reasons for doing so.'"  Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)

---

[4] See, e.g., Smith v. Massanari, 139 F.Supp.2d 1128, 1133 (C.D.Cal. 2001) (reliance on one physician's opinion in making a finding, which differs from that of another physician, is an implicit rejection of the latter); Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981) ("Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason [citation omitted], an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.").

(quoting Matthews v. Shalala, 10 F.3d at 678, 680 (9th Cir. 1993) (quoting Montijo v. Secretary of Health & Human Servs., 729 F.2d 599, 601 (9th Cir. 1984)); see also Lester, 81 F.3d at 830. Even if a treating physician's opinion on disability is controverted, it can be rejected only with specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830. The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. Lester, 81 F.3d at 830. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons supported by substantial evidence in the record to reject the contradicted opinion of an examining physician. Id. at 830-31.

"The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester, 81 F.3d at 831. Opinions of a non-examining, testifying medical advisor may serve as substantial evidence only when they are supported by other evidence in the record and are consistent with it. Andrews, 53 F.3d at 1041. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes, 881 F.2d at 750 (quoting Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986)). "'A report of a non-examining, non-treating physician should be discounted and is not substantial evidence when contradicted by all other evidence in the record.'" Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984), quoting Millner v. Schweiker, 725 F.2d 243, 245 (4th Cir. 1984).

The Court agrees with plaintiff that the ALJ did not articulate any specific and legitimate reasons to reject the fine manipulation restriction arrived at by Dr. Benrazavi in favor of the state agency physician's rejection of such a finding. While the ALJ concluded that the state agency physician's finding is "consistent with the medical record as a whole" [AR at 16], the finding was in fact wholly based on the examination performed by Dr. Benrazavi. Defendant acknowledges that the ALJ, in determining plaintiff's residual functional capacity, adopted the opinion of the non-examining physician. Joint Stip. at 9. Defendant further acknowledges that Dr. Jabat's opinion --

that an individual with plaintiff's impairments would not significantly lose fine manipulation or fingering -- was reached after he reviewed Dr. Benrazavi's report. Joint Stip. at 10. Defendant contends that Dr. Jabat's opinion concerning plaintiff's capacity for fine manipulation "was supported by substantial evidence showing that [p]laintiff's fourth and fifth digit impairments would not significantly limit fine manipulation." But the substantial evidence relied on by Dr. Jabat was simply his own conclusion. [AR at 200-01.] Defendant points to no other evidence in the record supporting such an opinion. The state agency physician simply came to a different conclusion after a review of the record, a conclusion that was not consistent with other evidence in the record. The ALJ thus did not meet his burden of showing that Dr. Jabat's opinion was substantial evidence where, as here, it was inconsistent with that of an examining physician and not supported by other evidence in the record.[5] Remand is warranted.

Finally, the Court cannot find the error harmless. The vocational expert testified that a person with the fine manipulation limitation could not perform plaintiff's past relevant work, but could work as a school bus monitor. Plaintiff contends that the expert "did not provide any numbers as to the number of these occupations available in the national economy," and thus defendant has not shown that there is substantial gainful work in the national economy that plaintiff can perform. Joint Stip. at 8. Plaintiff is correct that although the vocational expert testified that there are "very few" jobs that plaintiff can perform even with the limitations imposed by Dr. Benrazavi, only one such job was identified, and no evidence was presented as to whether it exists in significant numbers in the national economy. Remand is necessary, at a minimum, to resolve this issue. See 42 U.S.C. § 423(d)(2)(A) ("An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national

---

[5] The Court's review is limited to the reasons actually cited by the ALJ in support of his determination. See Connett v. Barnhart, 340 F.3d 871 (9th Cir. 2003) ("It was error for the . . . court to affirm the ALJ's . . . decision based on evidence that the ALJ did not discuss."). "We are constrained to review the reasons the ALJ asserts." Id. (citing Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001).

economy . . . . '[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."); 20 C.F.R. § 416.966(b) ("Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [the claimant is] able to meet with [his/her] physical or mental abilities and vocational qualifications. Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where [the claimant] live[s] are not considered <u>work which exists in the national economy</u>.") (emphasis in original).

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. <u>See</u> <u>Harman v. Apfel</u>, 211 F. 3d 1172, 1179 (9th Cir.), <u>cert.</u> <u>denied</u>, 531 U.S. 1038 (2000); <u>Kail v. Heckler</u>, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is warranted to remedy the ALJ's rejection of plaintiff's fine manipulation limitation.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **GRANTED**; (2) the decision of the Commissioner is **REVERSED**; and (3) this action is **REMANDED** to defendant for further proceedings consistent with this Memorandum Opinion

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: April 14, 2006

/S/
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

11